PROVOSTY, J.
Plaintiff sues the defendant administrator upon an alleged duebill of the deceased for $2,500; also in reimbursement of $278.45 said to have been paid by him for the deceased prior to the latter’s death; also for one-half of the price of one *425 jackass, one jennet, and one mower sold at the succession sale, of which.he claims to have been half owner, and one-half of a certain amount collected by the administrator for the service fees of the jackass, amounting to $218.50.
Defendant contests the claims in toto. He denies the genuineness of the duebill.
■ The deceased, Jesse McLain, was an uncle of the plaintiff and an old bachelor. He died in September, 1903, at the age of 75. Since the March preceding he had been living with his old maiden sister in Ruston, but for 18 years before that he had lived in the same house with plaintiff and his wife on a farm he had; the arrangement between them being that he defrayed the household expenses, and plaintiff attended to everything on the farm, and for his compensation had the use of a certain quantity of the land. The reason of the old gentleman’s going to live in Ruston was to he nearer to his' doctor. He would go to the farm occasionally for a day or two. The amount of his estate is not given in the record, but it was considerable. In late years he was never without a good deal of ready cash, but, it seems, was slow in paying his debts. His heirs are his sisters and nephews and nieces, of whom there are a great many.
Plaintiff’s story of the duebill is that in 1S81 the deceased and his brother, James W. McLain, borrowed from his mother $964, for which they executed their note, payable in one j’ear, with interest; that some years afterwards, the note being unpaid and prescribed, his mother was asked by the deceased, Jesse McLain, to waive her rights to the succession of her brother, James McLain, who had died leaving everything to Jesse McLain, but by a will that was invalid; that his mother would not consent to do this unless Jesse McLain 'promised to renew the prescribed note, and that Jesse McLain promised to renew the note, hut failed to do so; that in April, 1903, while going from Ruston to the farm in a buggy with Jesse McLain, he brought up the subject of the renewal of this old note, and Jesse McLain told him to get the old note and he wduld renew it; that the following morning he went over to his mother’s house several miles distant, and told her to give him the old note, as uncle Jesse said he would renew it; that his mother had her granddaughter, Miss Stemper, to get it, and give it to him; that the next morning he brought the matter up again with his uncle, and figured up the interest, and made a duebill for the amount in favor of his mother, and presented it to the -uncle for signature ; that it exceeded $2,500, and the uncle said he would not sign for so much, and, moreover, would not make the duebill in favor of his sister, but would sign it for $2,-500 and in favor of plaintiff; and that thereupon the duebill sued on was made.
We have not the opportunity of comparing the duebill with the genuine signatures of the deceased for the reason that the part of it on which the signature was has been most unaccountably lost. Hence we have to fall back on what the witnesses have said of it. The testimony is conflicting as is usual in such cases. Its preponderance is against the genuineness of the signature; but, giving plaintiff the benefit of an even balance, we think the decision must go against him.
1-Iis story is too improbable. I-Iis mother died two months before her brother, and he became her administrator. He did not inventory this duebill as part of her estate. He accounts for this by saying that this due-bill was his, because his mother had Said “All right” when he had reported to her that it had been made in his favor; and, moreover, he adds, it was his because made in his favor. He admits that he has agreed to divide with his sister, Mrs. Stemper, who, with her daughter, is the only witness who corroborates him touching the existence of a *427 $904 note. Mrs. Stemper, by the way, cannot say what was the amount of the note; knows only that it was about $1,000. Plaintiff: himself fixes the amount of said note indifferently at $964 and $974. Plaintiffs mother died in June, 1903. She visited her sister in Ruston in the February preceding; that is to say, two months before the time when plaintiff says she gave him the $964 note. The object of her visit was to bring to her brother a note of $150, which, she said, her son, the plaintiff, had been to her house two or three times to get, but which, she said, she would not let him have, as she did not want to let her brother be annoyed with it; that if her brother wanted to pay it, or renew it, it was all right, but that she would not let her children have a note against her brother to annoy him with. Plaintiff owed his mother a note of '$150. She continued to hold this note against plaintiff up to her death, and plaintiff had to pay it by taking less in her succession. We need hardly point out, after this, how improbable it is that she would have let plaintiff have a $964 note to annoy her brother with, or, if she did, and thereby realized an amount so large as $2,500, that she would have made a present of it to plaintiff, offhand, as testified to by plaintiff.
After the death of deceased, plaintiff made various statements as to his claims against the succession. The administrator, and Mr. Bernstein, the attorney of the administrator, testify that he told thiem that the estate owed him a note of $150, and also another old note of $940, of many years’ standing, and that, when told that this old note must be prescribed, his answer was that the deceased had waived prescription across the back some weeks before his death. To several members of the family he stated that he only had one small note against the estate for $150. On one occasion he was requested to put down in writing his claims against the succession, and he wrote down the following: '
$964, James and Jesse; $150, Jesse; Jack and Jenet and Mower.”
He now says he does not think he made the statement to Bernstein and the administrator, and that the various statements testified to as having been made by him were made simply to avoid unnecessary discussion and trouble.
On the subject of this note the judgment must be affirmed.
And we think this judgment, by discrediting plaintiff as a witness, carries with it as a logical consequence the rejection of plaintiff’s other claims, which, without plaintiff’s testimony, are not sufficiently supported. Moreover, these claims likewise are attended with a good deal of suspicion. When the inventory was being made, plaintiff pointed out the jackass, jennet, and mower as belonging to the succession, and set up no claim to part ownership. His explanation is that he forgot to mention his being a half owner. As to the payments said to have been made for the deceased, we find no reason why plaintiff should have made any payments out of his own money for Jesse McLain, since he was authorized to draw against the bank account of Jesse McLain, for all expenses. In March, 1903, Jesse McLain made a settlement with the plaintiff, and then told him to make no further debts or payments for him. The only voucher plaintiff produces bears date October 1, 1903 — that is to say, after the death of the deceased, when the administrator alone had the authority to make payments for the succession — and, when cross-examined as to this date and others, plaintiff admits that his account is unreliable in respect to dates.
A suspicious claim against a succession will be rejected, unless supported by very strong proof. Succession of Oubre, 109 La. 516; 33 South. 583, Cutler v. Succession of Collins, 37 La. Ann. 95; also Bodenheimer v. Bodenheimer’s Ex’rs, 35 La. Ann. 1006, and *429 Simpson v. Powell, 7 La. Ann. 555; Succession of Rice, 14 La. Ann. 317. Apart from Iris own testimony, and that of Mrs. Stemper and her daughter, with whom he has promised to divide, plaintiff offers no evidence, except that of one witness, who says plaintiff showed him the duebill a day or two before the death of the deceased. Of course, this •evidence has some weight; but it is not sufficient to dispel the cloud of suspicion which rests on the case, and it is noteworthy that the deceased was then at death’s door.
Judgment appealed from is set aside in so far as in favor of plaintiff, and affirmed in so far as against him; and plaintiff’s suit is dismissed, at his costs in both courts.